Southard v Harris (2021 NY Slip Op 01171)





Southard v Harris


2021 NY Slip Op 01171


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

530038

[*1]Martha Southard et al., Individually and as Trustees of the L. Miller Harris Family Trust, Respondents,
v
Peter Harris, Individually and as Trustee of the L. Miller Harris Family Trust, Appellant, and Debra Gross, Respondent.

Calendar Date: January 13, 2021

Before: Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Melvin & Melvin, PLLC, Syracuse (Michael Vaccaro of counsel), for appellant.
Bousquet Holstein, PLLC, Syracuse (Ryan S. Suser of counsel), for Martha Southard and another, respondents.
Costello, Cooney & Fearon, PLLC, Syracuse (Matthew W. O'Neil of counsel), for Debra Gross, respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (J. Sise, J.), entered August 6, 2019 in Hamilton County, which, among other things, partially granted plaintiff's motion for partial summary judgment.
Plaintiffs are the sisters of defendant Peter Harris (hereinafter Harris). In 1992, L. Miller Harris, the father of plaintiffs and Harris, established the L. Miller Harris Family Trust (hereinafter the trust), which was funded by real property. L. Miller Harris and his wife served as trustees until their deaths; thereafter, plaintiffs and Harris served as cotrustees and are also beneficiaries of the trust. The trust holds legal title to an 80% interest in real property located in the Town of Inlet, Hamilton County (hereinafter the property), which is improved by a single-story cottage. Plaintiffs and Harris are cotenants with their cousin, defendant Debra Gross, who owns the remaining 20% of the property. Plaintiffs, in their individual capacity and as trustees, commenced this action in January 2018 seeking, among other things, (1) an order authorizing the sale of the property and distribution of the proceeds according to the trust agreement, (2) a partition of the property and (3) a judgment finding Harris liable for breach of his fiduciary duty. Harris answered and asserted a counterclaim against plaintiffs, alleging that he paid a disproportionate amount of the expenses associated with the property due to plaintiffs' failure to make such payments, as well as several affirmative defenses. Gross also asserted numerous counterclaims and cross claims.
In September 2018, plaintiffs moved for partial summary judgment, requesting that Supreme Court grant their first and third causes of action and dismiss Harris' counterclaim. Gross joined plaintiffs in the portion of their motion seeking an order authorizing the sale of the property. Harris opposed a forced sale and requested that the court grant a physical partition of the property instead.[FN1] Supreme Court granted plaintiffs' motion for summary judgment as to their first cause of action, thereby authorizing a sale of the trust's interest in the property and distribution of the proceeds according to the trust agreement. The court dismissed Harris' counterclaim, but directed the parties to appear at a subsequent hearing to determine the amount of the property's expenses overpaid by Harris for the benefit of plaintiffs, which would be an adjustment against the future distribution of the sale proceeds. Harris appeals.
Harris contends that Supreme Court erred by granting summary judgment to plaintiffs as to their first cause of action and authorizing the sale of the property.[FN2] Ordinarily, a court would not have the power to intervene in the sale of property held by a trust as that is a power statutorily conferred upon the trustees (see EPTL 11-1.1 [b] [5] [B]; [c]; see generally Matter of Lovell, 23 AD3d 386, 387 [2005]). Moreover, here, the trust specifically confers upon the trustees the authority [*2]to sell the property. Although all three trustees are not in agreement to sell, plaintiffs are in agreement and, in the absence of any provision to the contrary in the trust, the power to sell may be exercised by plaintiffs as they make up a majority of the trustees (see EPTL 10-10.7). However, plaintiffs not only seek an order authorizing the sale of the property, they also seek an order authorizing the sale of the trust's interest in the property and distribution of the proceeds. It is due to the latter that plaintiffs seek court intervention, as all of the trustees are also beneficiaries and thus are disqualified from making discretionary distributions to themselves (see EPTL 10-10.1; Grace v Grace, 155 NYS2d 336, 340 [1956]).
In their motion for partial summary judgment, plaintiffs argued that selling the property would be a sound business judgment because the property has been generating significant expense at no benefit to plaintiffs, which is in direct contradiction of the trust's purpose of generating and distributing income to its beneficiaries. In support of their motion, plaintiffs offered, among other things, the trust, which explicitly states that it was "created for the primary benefit of [L. Miller Harris'] issue." Section 4.2 contemplates a sale of the property and explicitly provides that, "[i]f any part of the real property held by the trust is sold, the [t]rustee may, in his discretion, distribute any part of the net proceeds of the sale to the [s]ettlor's then living issue, in equal shares." Additionally, section 9.1 of the trust vests the trustees with discretionary powers "without limitation by reason of specification . . . to sell, exchange, or otherwise dispose of any property at public or private sale, for a consideration and upon terms, including credit, as seems advisable." Plaintiffs also submitted the affidavit of plaintiff Martha Southard, who averred that the property has always been the sole asset of the trust and that the trust never generated any income for its beneficiaries. Southard stated that between 2008 and 2014, she paid Harris approximately $69,000 towards the property's expenses, but, thereafter, she could no longer afford the expenses. Plaintiff Rebecca Lesniewski also submitted an affidavit in which she averred that, in 2010, she and Southard agreed to share the property's expenses with Harris and that, between 2008 and 2013, Lesniewski paid Harris approximately $46,000 toward expenses.
Plaintiffs met their initial burden of establishing their "prima facie entitlement to summary judgment as a matter of law by submitting evidentiary proof in admissible form, demonstrating the absence of any material issues of fact" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1209 [2020] [internal quotation marks and citation omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).[FN3] Not only does the trust unambiguously establish that the trustees are permitted to sell the trust's ownership [*3]interest in the property, Southard and Lesniewski's affidavits established that the property has been generating significant expense at little or no benefit to plaintiffs, in direct contradiction to the purpose of the trust. Plaintiffs established both that the trust permitted them to sell the property and that, as the property was causing expense to plaintiffs and Harris, it would be a sound business judgment to effectuate this sale. Thus, the burden shifted to Harris to "demonstrate that a triable issue of fact exists" (Reed v New York State Elec. & Gas Corp., 183 AD3d at 1210; see Alvarez v Prospect Hosp., 68 NY2d at 324).
Harris failed to meet his shifted burden. In opposition to plaintiffs' motion, and in support of his counterclaim, Harris offered an attorney affirmation by Michael R. Vaccaro, who asserted that the property is "unique" and that "the settlor wanted the [t]rust to own the property, or a controlling interest in it, and maintain and preserve the property intact for the benefit, possession, use and enjoyment of the settlor's descendants." Vaccaro further states that the "settlor did not establish the [t]rust to earn income." Vaccaro also asserted that any nonuse of the property by plaintiffs is their choice and that plaintiffs' requested relief "will destroy the [t]rust's purpose to primarily benefit the settlor's children and more remote descendants through preservation of the property for them." However, contrary to this assertion, this purported purpose is not supported by the trust. Moreover, this contention is inconsistent with the express language of the trust, which allows for such a disposition of the trust assets. Accordingly, the conclusory allegations in Harris' opposition affirmation are insufficient to raise a material issue of fact (see CPLR 3212 [b]; Maidman Family Parking, L.P. v Wallace Indus., Inc., 155 AD3d 1162, 1165 [2017]), and, therefore, Supreme Court properly granted plaintiffs' motion for partial summary judgment on the first cause of action. To the extent not specifically addressed herein, Harris' remaining contentions have been examined and found to be lacking merit.
Egan Jr., J.P., Clark, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: Plaintiffs did not request a partition in their motion for summary judgment, nor did Harris cross-move for a physical partition; rather, he merely argued this point in the affirmation in opposition to plaintiffs' motion.

Footnote 2: Harris raises no arguments relative to Supreme Court's dismissal of his counterclaim or the court's ordering of a hearing to determine the amount of any overpayments.

Footnote 3: Supreme Court properly determined that, to rule on plaintiffs' motion, it was not required to inquire into the benefits of partition versus sale, as plaintiffs' motion for partial summary judgment did not seek partition, and Harris did not cross-move for said relief.